## Benjamin Shaw *versus* Lendall M. Gray & al.

The powers of the Supreme Judicial Court, as a court of equity, are specific, and limited by statute ; and in regard to mortgages, are expressly confined to " suits for the redemption or foreclosure" thereof. What is to be understood, in this instance, by *foreclosure*, it may be difficult to ascertain; but the Court, it is believed, are not vested with the power to decree a foreclosure in any case. The acts which are to foreclose a mortgage are, in every case, to be those of the mortgagee, or of those standing in the place of the mortgagee.

An individual conveys two tracts of land in mortgage, and afterwards conveys, by deeds of warranty, one tract to the plaintiff and the other to W. who stipulates with his grantor to pay the amount due to redeem the whole mortgage ; W. does not redeem it, and conveys the land by quit claim deed, subject to the mortgage, to G. who verbally agrees with his grantor to pay the debt secured by the mortgage ; G. procures an assignment of the mortgage to be made to himself, possession having been previously taken to foreclose the same, and the three years expire, when he sells the land he purchased of W. to one man, and another tract, originally sold to the plaintiff, and included in the mortgage, to H. who is ignorant of the former transactions; the plaintiff brings his bill in equity against G. and H. praying to have a decree made, directing that this land should be conveyed to him ; *it was held*, that the bill could not be maintained against either G. or H.

This was a bill in equity against Lendall M. Gray and Edward Gray. The plaintiff is Benjamin Shaw of Newport. Another man of the same name, Benjamin Shaw of Orono, on Sept. 16, 1826, mortgaged certain lands to Sanger to secure the payment of a debt, who on Aug. 27, 1827, took possession under his mortgage for condition broken. On Feb. 23, 1828, Shaw of Orono by deed of warranty conveyed certain lands to Shaw of Newport, a part of which was included in Sanger's mortgage, and on the same day conveyed other lands to Whitney, a part of which also was covered by the mortgage. As part consideration for this conveyance, Shaw, of Orono, took Whitney's note for the amount due on the Sanger mortgage, and deposited it with a third person, and agreed that whatever Whitney paid to Sanger should be indorsed on this note, and Whitney agreed with him to pay Sanger. Whitney made one payment on the mortgage, but neglected to pay the residue. On Feb. 15, 1830, Whitney

was indebted to Edward Gray, and conveyed to him the premises purchased of Shaw of Orono and covered by the Sanger mortgage, subject to the mortgage, Gray agreeing with Whitney verbally, to pay Sanger, and receiving from Whitney a small sum, being the difference between the estimated value of the land, and the amount due to Sanger and to himself. On Aug. 23, 1830, four days before the time for redemption would expire, E. Gray took an assignment of the Sanger mortgage to himself, this mortgage including a part of land conveyed by Shaw of Orono, to Shaw of Newport. On Nov. 25, 1831, the right to redeem the mortgage having expired, E. Gray conveyed a part of the premises included therein to Butler; and the plaintiff alleges in his bill, that E. Gray received of Butler sufficient to pay the mortgage and his own debt. On March 13, 1834, E. Gray for the consideration of $125,00, conveyed the residue of the premises, the same being a part of the land conveyed to the plaintiff by Shaw of Orono, and not included in the deed to Whitney, to Lendall M. Gray, the other defendant. The bill concludes with the prayer, " that said L. M. Gray may be required by deed of release or otherwise to deed to your orator the land conveyed by said E. Gray to said L. M. Gray, as aforesaid, on such terms as to your honors shall seem meet, and that your orator may have such other and just relief in the premises as the nature and circumstances of the case may require, and to your honors may seem meet."

The case was spread over a large surface; but it is believed that this short history of the transactions, with the remarks upon the facts by the Court, will be sufficient for the understanding of the questions of law arising in the case.

*J. Appleton*, for the plaintiff, contended that Shaw of Orono had conveyed the land in controversy to the plaintiff by deed of warranty, leaving other lands included in the mortgage more than enough to pay it off, which were afterwards, although on the same day, conveyed by him to Whitney; that the land thus conveyed to Whitney stood charged with

the payment of the mortgage; that Whitney was bound in law to pay off the mortgage; and besides agreed to do so, and had a fund placed in his hands for that purpose. It was Whitney's duty to us to redeem this mortgage and relieve our land. He sits in the seat of his grantor, and can have no greater rights. Independent of the agreement and the fund in his hands, the second grantee must pay off the mortgage, and can claim no contribution of the first. If then Whitney had taken an assignment to himself, the mortgage could not have been enforced against us. 1 Johns. C. R. 447; 5 Johns. C. R. 240; 10 English C. R. 500; 2 Atk. 446; 2 Paige, 300; 3 Leigh, 532; 10 Serg. & R. 450; Fonb. Eq. 514; 6 Paige 39; 1 Cowen, 592; 2 Pow. on Mort. (Rand's Ed.) 873; 17 Pick. 55.

Edward Gray purchased with full knowledge of all the facts, and took but a quit claim deed subject to the mortgage thereon, retaining of the purchase money sufficient to discharge the mortgage, and relieve our land. He then stands in the place of Whitney. 3 Edw. C. R. 133; 9 Paige, 446, 648.

L. M. Gray, the other defendant, is in a similar position. He must be presumed to have knowledge of the records and of their contents. The description of the premises shows our deed was before Whitney's. And besides he had personal knowledge of our claim to this land. This was enough to put him on enquiry, and that is sufficient. 8 Conn. R. 389; 9 Conn. R. 290; 7 Conn. R. 333; 2 Powell on Mor. c. 77, § 13. Before the conveyance to L. M. Gray, E. Gray had received all the money due on the mortgage, and all his advances. The mortgage therefore, as to the plaintiff, was discharged before the three years expired. The plaintiff's land was freed from it. Nothing passed by the deed from E. Gray to L. M. Gray. 4 Johns. C. R. 530; 3 Johns. C. R. 53; 6 Johns. C. R. 395; 3 Sumn. 477; 2 Sumn. 489; 6 N. H. R. 12; 5 Munf. 402; 3 Greenl. 207.

*A. G. Jewett*, for the defendant, said that if there was any cause of action for the plaintiff against Whitney, it was

at law, and not in equity. It was solely on the covenants of his deed, that Whitney was liable to the plaintiff for any injury sustained in consequence of the mortgage. Whitney was never bound to pay the mortgage. He thought it for his interest to do so, and for that purpose had his note placed in the hands of a third person, with liberty to have his payments on the Sanger note indorsed on his own note. The conversation about the payment of this note by paying Sanger, was not binding on either party. The plaintiff was paid or secured for the full consideration of the purchase by Whitney, and no fund was left in his hands.

It is enough, that the plaintiff was an entire stranger to any arrangements made between Whitney and E. Gray. Whether there was or was not any obligation on the part of the latter to redeem the mortgage, is one with which the plaintiff has no concern. But as between Gray and Whitney, Gray was not bound to redeem the mortgage. He took the land subject to the mortgage, so that he had no claim on his grantor to redeem it, but he was entirely at liberty to suffer it to be foreclosed, or to redeem it. Any prior parol agreement was merged in the written one. Any person but the mortgagor, may take the assignment of a mortgage without extinguishing it, and the Court will uphold it as a mortgage, if it is for the interest of the purchaser to keep it alive. 3 Greenl. 260 ; 7 Greenl. 377 ; 3 Pick. 475 ; 5 Pick. 146 ; 8 Mass. R. 491 ; 14 Maine R. 9 ; 16 Maine R. 149. Whitney could maintain no action against Gray for refusing to redeem the mortgage, and much less the plaintiff with whom he never made any agreement whatever.

The plaintiff had the same right and the same opportunity to purchase in the mortgage as the defendant. Any one of several owners of the land mortgaged may redeem, and hold upon the mortgage until he is paid. The defendant could not compel the plaintiff to redeem ; and if he did not choose to do it himself he has no cause of complaint. 5 Pick. 152.

The plaintiff knew all the facts, saw the defendant making improvements, and making sales of this land, and in every respect treating it as his own, and never gave any notice that he

claimed it. He has thereby waived all claim, if he otherwise might have had one. 5 Johns. C. R. 272; 1 Story's Eq. 379; 16 Maine R. 149; 1 Johns. C. R. 344; 2 Story's Eq. 486.

Lendall M. Gray purchased the land now in controversy, and paid its full value, without any notice of the claim now set up by the plaintiff. This land was never conveyed to Whitney, and L. M. Gray had only to see that it was in the mortgage to Sanger, and that he had a good title under it. He was entirely ignorant of the other titles, and transactions, and was under no necessity of looking into them. It is difficult to conjecture any ground of claim by the plaintiff, or indeed by any other person, on account of his purchase of this land.

The opinion of the Court was by

WHITMAN C. J. — An individual conveyed two certain tracts of land in mortgage to one Sanger; and, afterwards, sold one of the tracts to Samuel Whitney; and the other to the plaintiff, by deeds of warranty; Whitney having stipulated, in consideration of the conveyance to him, to pay the amount due to redeem both. The plaintiff and said Whitney thereupon became the assignees of the mortgagor, as to the tracts purchased by each severally. But Whitney, having in trust the fund, with which the whole was to be redeemed, could not take an assignment from the mortgagee without rendering himself liable to the mortgagor for a breach of contract; and a Court, having general equity powers, might compel him to place himself in the condition he would have been in, if he had merely procured the mortgage to be discharged; and it may be that the same might be done by the plaintiff, he being, in reference to a portion of the mortgaged premises, the assignee of the mortgagor. But the powers of this Court, as a Court of equity, are specific, and limited by statute. In regard to mortgages it is confined to " suits for the redemption or foreclosure" thereof. What is to be understood, in this instance, by foreclosure, it may be difficult to ascertain; for the legislature have prescribed with precision, what shall be done to foreclose a mort-

gage. This Court, it is believed, are not vested with the power to decree a foreclosure in any case. The acts which are to foreclose a mortgage are, in every case, to be those of the mortgagee, or of those standing in the place of the mortgagee. It is not presumable, that the legislature intended to superadd a power in this Court to adjudge or decree a foreclosure upon grounds other than what they have specifically enacted to be such. As to suits for redemption, the power delegated must have reference to the mode of proceeding particularly prescribed for the purpose. If the bill can be considered as presenting a case, on the part of the plaintiff, under either branch of the statute, it must be upon the ground that the defendants, or one of them, is or are in the condition of a mortgagee; and that the plaintiff is in the condition of the mortgagor; and that the amount due to discharge the mortgage has been paid. It is not pretended that either of the other alternatives in the statute have been performed, so as to give the plaintiff a right to proceed as the assignee of the mortgagor.

If the parcel of land, claimed by the plaintiff, were in the possession of Edward Gray at the time of the filing of the bill, or if it were at that time in the possession of Lendall M. Gray, and had been acquired by him with knowledge, on his part, that Edward Gray, of whom he purchased, held the same by a defeasible title, it may be that we could pass a decree in the plaintiff's favor, as prayed for by him. But if Lendall M. Gray has acquired an indefeasible title to the premises, it would be out of our power to afford the plaintiff the relief particularly designated by him. We could not in such case order a release to be made of the premises to the plaintiff.

It will then be well, in the first place, to consider whether Lendall M. Gray, when he purchased of Edward, could fairly suppose that Edward had an indefeasible title to convey. It is alleged that Edward, not only had no such title, but that Lendall knew it; and that the sale to him was by collusion. But the proof does not seem to support these allegations. It is admitted by L. M. Gray in his answer, that he knew the

plaintiff made some kind of claim to the land ; that he pretended there was an elder title to it, than the one set up under the mortgage ; and that he avowed his determination to avail himself of it ; and the proof goes no further than the answer admits. This is very different from knowledge that there had ever been a redemption of the mortgage ; and quite a number of years after his purchase would seem to have elapsed before he ever heard of any thing of the kind. When Edward took an assignment of the mortgage, it is admitted the right of redemption had nearly expired. Looking at the record, Lendall might well see it to have been so ; and, looking at the assignment to Edward, he would not be led to apprehend that he had not a perfect title to the land. It does not appear that he had the slightest intimation, at the time he purchased, that there was any pretence that Edward had been furnished with funds to enable him to redeem the premises. He might, therefore, well suppose Edward's title to be good ; and might innocently purchase the same of him ; and having so purchased, must be considered as having acquired an indefeasible estate therein. 1 Story's Eq. 415. He cannot, therefore, be decreed to release the same to the plaintiff. And this puts an end to our power to deal with the estate, as a Court of equity, under the mortgage ; and the bill, as against Lendall M. Gray, must therefore be dismissed.

The next question is, can the bill be sustained against Edward Gray upon any other grounds. If there was a fund, as is supposed, placed in his hands, and there is much reason to suppose there was, for the purpose of redeeming the mortgage, which cannot now be made available for such purpose, can it be reached by this process for the benefit of the plaintiff? Can we award that it shall be paid to him? or can we assess damages for the breach of the undertaking, on the part of Edward, to redeem ; and decree the same to be paid to the plaintiff? If it be considered that a sum of money was placed in Edward's hands in trust to redeem the mortgage, by whom was it placed there? and who is the *cestui que trust*. Not the plaintiff. There is no privity between him and Edward

Gray. The privity is between Samuel Whitney and Edward Gray. There was no privity between Edward and the grantor of Whitney; and much less between the former and the plaintiff, who is but a collateral grantee of a different parcel of real estate from the grantor of Whitney. Without such privity, or certainly without collusion between the said grantor and said Whitney, with the said Edward, of which there is not the slightest pretence, the plaintiff could not recover. 3 Story's Eq. § 262, 513 — 17.

If the plaintiff would proceed against the said Edward upon the ground of fraud, he would still find obstacles to encounter. The fraud must be alleged to consist in the purchase of an assignment of the mortgage, instead of redeeming it with funds in Edward's hand, placed there by Whitney for the purpose; and of the sale of the premises in question to L. M. Gray in fee, &c. in which case the same want of privity would exist as in case of the supposed trust.. The immediate fraud, if such it could be called, was committed against Whitney. The injury to him was direct. The plaintiff is in no sense his assignee; and Whitney is not responsible to him. This bill, then, upon any such ground is not sustainable.

Besides, the allegations in the bill are not such as to entitle the plaintiff to recover upon the ground either of fraud or trust. The claim is to have a redemption decreed; or that the amount paid for the assignment should be treated as a redemption. But this having become impossible from the circumstance that L. M. Gray cannot be disturbed in the enjoyment of his purchase of Edward, nothing but damages can be recovered for the breach of his engagement; or for the fraud, if such it could be deemed; and the bill, setting forth no such ground of claim, the defendant, Edward Gray, could have no intimation that he was to place himself upon his defence, as to any such claim. If this had been set forth as the ground of claim, the plea of the statute of limitations might have been interposed, in addition to the want of privity. There was no concealment of the facts from which the fraud is supposed to be inferable. They were mostly matters of record. His sup-

posed rights were invaded eight or nine years ago with his knowledge. Having slept so long over the alleged wrong he cannot reasonably complain if he is subject to some inconvenience in consequence of it. He however is probably not without his remedy against his warrantor; and it must be a plain, adequate and appropriate one.

*Bill dismissed.*